E-FILED
Wednesday, 19 January, 2022  10:43:34 AM
Clerk, U.S. District Court, ILCD

FILED

AO 106A  (08-18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois

JUN 1 5 2021

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )          Case No. 21-MJ - 7068
Cell phone in a case with Red flowers seized from )
Lorenza Domingo-Castaneda and more particulary )
described in Attachment A )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
Cell phone in a case with Red flowers seized from Lorenza Domingo-Castaneda and more particularly described in Attachment A

located in the _____Central_____ District of _____Illinois_____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1324 | Harboring certain aliens; |
| 18 U.S.C. § 1028 | Fraud in connection with identification documents; |
| 18 U.S.C. § 1546 | Fraud and misuse of visas, documents & other permits; |
| 18 U.S.C. § 1590 | Human trafficking; |

The application is based on these facts:

See attached Affidavit of  Special Agent Trevor Waite, U.S. Dept. of Homeland Security, Immigration & Customs Enforcement

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/Trevor Waite

_____
*Applicant's signature*

Trevor Waite, Special Agent, HSI/ICE
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*
s/Eric I. Long

Date: ___06/15/2021___

_____
*Judge's signature*

City and state: Urbana, Illinois

Eric I. Long, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A CELL PHONE IN A CASE WITH RED FLOWERS SEIZED FROM LORENZA DOMINGO-CASTANEDA AND MORE PARTICULARLY DESCRIBED IN ATTACHMENT A. | Case No. 21-MJ-<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Trevor Waite, the undersigned affiant, being first duly sworn upon oath, depose and state as follows:

1.      I am a Special Agent (SA) with the U.S. Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), assigned to the Office of the Resident Agent in Charge (RAC) in Springfield, Illinois. I have been employed as a Special Agent since December of 2009. I have received training at the Federal Law Enforcement Training Center, in Glynco, Georgia. Prior to becoming a SA with ICE, I was a Police Officer with the New York State University Police, in Oswego, New York, from May of 2008 until joining ICE in December of 2009. In order to become a certified Police Officer in New York State I graduated from the Central New York Police Academy, in Syracuse, New York. Prior to becoming a Police Officer, I earned a Bachelor of Arts in History degree, with a Minor in Criminal Justice, from the State University of New York at Potsdam in December of 2007. In my duties, I am assigned to investigate alleged violations of the United States Code, including activities which constitute the production, distribution, possession and use of fraudulent documents, as well as the unlawful employment of unauthorized aliens.

2.      This affidavit is submitted in support of the application for a search warrant

authorizing the search of a cellular telephone (hereinafter referred to as the "SUBJECT

DEVICE") seized from the person of Lorenza Domingo-Castaneda following Domingo-

Castaneda's arrest for violations of 18 U.S.C. § 1546, Fraud and misuse of visas, documents and

other permits, and 8 U.S.C. § 1326, Re-Entry of Removed Aliens. The SUBJECT DEVICE is

more particularly described as:

> A cell phone inside a cell phone case with red flowers on it. A partial Model number, LM-Q730T, is visible on the back of the phone through the clear portion of the cell phone case. Based on open-source records checks of the partial Model number agents believe the cell phone to be an LG Stylo 6. The cell phone is pictured in Attachment A.

This warrant is sought in connection with an ongoing criminal investigation of violations of

federal law, including, but not limited to, 8 U.S.C. § 1324, bringing in and harboring of certain

aliens, 18 U.S.C. § 1028, fraud and related activity in connection with identification documents,

authentication features, and information, 18 U.S.C. § 1028A, aggravated identity theft, 18 U.S.C.

§ 1546, fraud and misuse of visas, documents and other permits, 18 U.S.C. § 1589, forced labor,

18 U.S.C. § 1590, trafficking with respect to peonage, slavery, involuntary servitude, or forced

labor, and 18 U.S.C. § 371, Conspiracy.

3.      I am familiar with the information contained in this affidavit based upon the

investigation I have conducted and where noted, information related to me by other law

enforcement officials. This affidavit is intended to show merely that there is sufficient probable

cause for the requested warrant; I have not included each and every fact known to me concerning

this investigation.

4.      Based on the facts set forth in this affidavit, your affiant believes there is probable

cause that the SUBJECT DEVICE contains messages, photographs, call logs, contact lists,

receipts, ledgers, documents, records, and/or other items as described in this affidavit, all of

which are evidence, fruits and instrumentalities demonstrating violations of 8 U.S.C. § 1324 and

18 U.S.C. §§ 1028, 1028A, 1546, 1589, 1590, and/or 371, documents and records regarding the

ownership and/or possession of the SUBJECT DEVICE, and will lead to the identification of

individuals who are engaged in the commission of the aforementioned offenses. These items are

detailed in Exhibit B, which is attached.

5.      Since March 2021, your affiant has been conducting an investigation into the

smuggling, sexual assault, and forced labor of two juvenile female victims (hereinafter referred

to as Victim 1 and Victim 2 respectively). Through this investigation your affiant has become

familiar with the extended family of Lorenza Domingo-Castaneda.

6.      Both Victim 1 and Victim 2 are juvenile natives and citizens of Guatemala who

are unlawfully present in the United States. Immigration records show that Victim 1 was

encountered by Border Patrol after unlawfully entering the United States on February 13, 2016,

at the age of 10. These records, as well as additional investigation, revealed that Victim 1 was

accompanied by a yet to be charged co-conspirator who claimed Victim 1 to be his daughter,

despite that fact this individual was not a familial relative of Victim 1. Due to extensive criminal

history, this individual was returned to Guatemala and Victim 1 was ultimately placed with this

individual's sister, Catarina Domingo-Juan. Immigration records show that Victim 2 was

encountered by Border Patrol after unlawfully entering the United States on June 13, 2019, at the

age of 13. Victim 2's stated goal to Border Patrol was to travel to Champaign, Illinois "to live

with her aunt, Lorenza Dominguez-Castaneda".

### Investigation of Catarina Domingo-Juan

7.      Victim 1 came to the attention of law enforcement after Victim 1 was taken into

protective custody by the Warren County (MO) Children's Division. Victim 1 had been taken to

3

the hospital due to what was later determined to be a miscarriage that required surgery. The Wright City Police Department contacted the St. Louis County Police Department regarding Victim 1 and ultimately Victim 1 was interviewed by Federal Bureau of Investigations (FBI) St. Louis Division Special Agent Daniel Root. Through this initial interview law enforcement learned the following:

- Victim 1 had been residing with Catarina Domingo-Juan and her family in Champaign, Illinois;

- Victim 1 attended school for approximately two years and then Domingo-Juan began forcing Victim 1 to go to work in the evenings after school;

- Victim 1 stated the work was initially in hotels and factories and later just in factories;

- Victim 1 stated Domingo-Juan used false documents (that modified her age and legal status in the United States) in order to allow Victim 1 work;

- Victim 1 stated Victim 1 had most recently worked at Kraft and "Pasty Park" [ph], [Agents Note: This has subsequently been determined to be Plastipak Packaging, located in Champaign, Illinois];

- Victim 1 stated Domingo-Juan would take Victim 1's paychecks and has stated that Victim 1 owes Domingo-Juan ten to fifteen thousand dollars for housing Victim 1;

- Victim 1 stated Domingo-Juan was physically abusive and SA Root observed numerous wounds on Victim 1's body that Victim 1 attributed to abuse inflicted by Domingo-Juan;

- Victim 1 indicated Domingo-Juan's two sons had raped Victim 1 numerous times;

- Victim 1 stated she was unaware that she was pregnant until doctors advised her that she had a miscarriage.

8.      On March 31, 2021, your affiant received information from a Source of Information (SOI) indicating that Domingo-Juan was employed at DSC Logistics, now known as CJ Logistics, located at 710 N Mattis Avenue, Champaign, Illinois. Your affiant is aware through previous investigations that there are actually a number of different businesses that employ individuals in that same general area which individuals frequently associate with DSC. Your affiant and Champaign Police Department (CPD) Detective Kaitlin Fisher went to CJ Logistics in an attempt to verify Domingo-Juan was an employee of CJ Logistics. After showing an HR Representative from CJ Logistics a photo of Domingo-Juan the representative stated that he recognized her but believed she worked for Menasha, another company in the same general location.

9.      Your affiant and Detective Fisher went to Menasha, also located at 710 N Mattis Avenue, Champaign, Illinois, and met with Human Resources Representatives from Menasha who indicated Menasha has several employment agencies that they work directly with at that location. Your affiant showed the photo of Domingo-Juan to a representative from Elite Staffing who indicated Domingo-Juan was an employee of Elite Staffing at that location who was using the name Lissete Echeverria. The Elite staffing representative indicated Domingo-Juan was working at that time. At your affiant's request Elite Staffing provided your affiant with the Form I-9 associated with the employment of "Echeverria" by Elite Staffing, as well as the Elite Staffing badge photo of "Echeverria"

10.     Your affiant reviewed the provided Form I-9. Section 1 of the form is the Employee Information and Attestation section and it specifies that this section is to be completed and signed by the employee "no later than the first day of employment, but not before accepting

5

a job offer." The form appears to have been electronically completed and signed in the name "lissete i echeverria" on January 3, 2020.

- The following information was completed on the form:

   Name: Lissete I Echeverria

   Address: 305 N 3rd, Champaign, Illinois 61820

   Social Security #: 619202952

- The following admonition appears below the aforementioned provided information: "I am aware that federal law provides for imprisonment and/or fines for false statements or use of false documents in connection with the completion of this form."

- The Form I-9 also states "I attest under penalty of perjury, that I am (check one of the following boxes):", instructing the employee to select one (1) of four (4) possible choices. The box is marked next to the choice stating the employee is "1. A citizen of the United States".

- On the second page of the Form I-9 the following documents are listed as having been presented to show eligibility to work in the United States:

   o List B, Document Title: State ID Card w/ photo, Issuing Authority: Texas, Document Number: 85692013, Expiration Date (if any): 12/07/2023;

   o List C, Document Title: U.S. Social Security Account Number card that is unrestricted, Issuing Authority: Social Security Administration, Document Number: 619202952, Expiration Date (if any): N/A.

11.    In speaking with the representative from Elite Staffing the representative indicated that it is their company policy not to keep copies of documents provided during the hiring process with the exception of Permanent Resident cards. As a result copies of the

6

aforementioned documents provided on the Form I-9 were not retained by Elite Staffing. The representative indicated that while she was not the individual who had certified the aforementioned documents on this particular Form I-9 she has been involved in certifying documents for other Forms I-9 for Elite Staffing. The representative indicated that when an individual presents the certifying individual documents the certifying individual examines the documents to verify that that number on the documents matches the numbers listed on the Form I-9 and then certifies that they have examined. The aforementioned documents were examined and certified by Elite Staffing On Site Supervisor Alexandria Rubio on January 3, 2020. Your affiant found that Rubio is no longer employed with Elite Staffing.

12.     Your affiant conducted criminal history checks through the National Crime Information Center (NCIC) and found Lissette Ivonne Echeverria with criminal history from California under FBI number 864560JB0. These records checks further showed Echeverria has previously reported her Place of Birth to be El Salvador and her Social Security number to be 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.[1] Further review of the NCIC return revealed Echeverria's A number is 075 598 626.

13.     Your affiant conducted records checks of immigration databases which revealed Lissette Echeverria Salazar is a naturalized United States Citizen who was born in El Salvador.

14.     Your affiant conducted records checks on Texas ID card 85692013. Those records checks revealed no record on file for Texas ID card 85692013.

---

[1] Your affiant is aware that an additional Social Security number similar to that of ECHEVERRIA shows up in the response for ECHEVERRIA through NCIC. Your affiant conducted additional records checks through other law enforcement agencies and found this additional Social Security number is mistakenly associated with ECHEVERRIA and is actually assigned to another individual.

**Search Warrant at Lorenza Domingo-Castaneda and Catarina Domingo Juan's Residence**

15.     On April 12, 2021, agents from HSI Springfield executed Search Warrant 21-MJ-7054 at 10 Lemon Tree Drive, Champaign, Illinois. At the time of the search warrants execution both Lorenza Domingo-Castaneda and Catarina Domingo-Juan were living at the residence. Agents encountered and arrested Catarina Domingo-Juan on an outstanding warrant for violation of 18 U.S.C. § 1546. Lorenza Domingo-Castaneda was not present at the residence during the search warrants execution. The search of the residence resulted in the seizure of, among other items, a number of fraudulent state identification cards and fraudulent Social Security cards. The following Social Security cards were amongst those found and were bearing the following names and Social Security numbers:

> a) Jeannette Berenise Camacho - 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;
>
> b) Lissete Ivonne Echeverria - 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;
>
> c) Anna Rebecca Martinez - 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;
>
> d) Margarita Guadalupe Lopez - 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;
>
> e) Kacy Marie Sevilla - 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.

16.     The following fraudulent state identification cards were amongst those located during the search of the residence:

> a) A fraudulent Ohio Identification Card bearing the name Jeannette Berenise Camacho, Date of Birth 06/10/1992, License number SC890363, and a photograph of who law enforcement believes to be Victim 2;
>
> b) a fraudulent Indiana Identification card bearing the name Kacy Marie Sevilla, Date of Birth 08/04/1999, DLN 3760-40-3257, and a photograph of who law enforcement believes to be Victim 2;

c) a fraudulent Tennessee Identification card bearing the name Margarita

Guadalupe Lopez, Date of Birth 06/02/1994, ID card number 745990875, and a

photograph of Victim 1;

d) a fraudulent Indiana Identification card bearing the name Anna Rebecca

Martinez, Date of Birth 03/14/2000, DLN 3274-23-7263, and the same

photograph of Victim 1 referenced in document c above.

**Human Trafficking and Sexual Assault Investigation of Victim 2**

17.    During the course of this investigation, your affiant reviewed reports from the

Champaign County Sheriff's Office investigation into the forced labor and sexual assault of

Victim 2. Your affiant noted the following information which was pertinent to this ongoing

investigation:

- Victim 2, after being brought to the United States from Guatemala, had been

  residing with Victim 2's step-sister, Florentina Juan-Andres and Juan-Andres

  boyfriend, Francisco Domingo-Castaneda, the brother of both Catarina Domingo-

  Juan and Lorenza Domingo-Castaneda;

- Victim 2 left Juan-Andres and Domingo-Castaneda's residence because she did

  not feel safe, Victim 2 stated she had been forced to work, babysit for Juan-

  Andres children, and had been sexually assaulted by Francisco Domingo-

  Castaneda;

- Victim 2 indicated Francisco Domingo-Castaneda, Juan-Andres, and Victim 2

  had all worked at Plastipak. Victim 2 indicated Francisco Domingo-Castaneda

  had obtained a "paper" for Victim 2 and that she needed to go to work. Victim 2

  stated she worked under the name Jeannette Berenise Camacho. Victim 2 further

9

stated that she worked at Plastipak for a month and during that time had been paid

on a prepaid debit card. Victim 2 indicated she had not received any of the money

from her labor;

- Victim 2 indicated she had been battered by both Juan-Andres and Lorenza
Domingo-Castaneda.

- Victim 2 identified a photograph purported to be of "Alexis Lee Ann Trevino" an
employee at Plastipak as Juan-Andres;

18.     On September 14, 2020, CCSO arrested Francisco Domingo-Castaneda at

Plastipak on an outstanding warrant and transported Francisco Domingo-Castaneda to CCSO for

an interview. During the interview and after being advised of his rights, per Miranda, Francisco

Domingo-Castaneda admitted to obtaining "a fake paper" for Victim 2 to work at Plastipak.

Francisco Domingo-Castaneda indicated Juan-Andres had sent Victim 2 to work at Plastipak to

repay debt accrued from her being brought to the United States. Francisco Domingo-Castaneda

indicated Victim 2's earnings went to Juan-Andres.

19.     On September 15, 2020, CCSO Detective Brad Wakefield obtained a consensual

interview from Juan-Andres at CCSO. During the interview, Juan-Andres stated that Juan-

Andres had paid three thousand five hundred dollars ($3500) to a "coyote" to have Victim 2

smuggled from Guatemala to the United States. Juan-Andres indicated Victim 2 had arrived in

the United States in June or July of 2019. Juan-Andres indicated that Victim 2 had worked at

Plastipak for approximately four (4) weeks using fake identification obtained by Francisco

Domingo-Castaneda and Juan-Andres at a cost of five hundred dollars ($500). Juan-Andres

indicated Juan-Andres maintained Victim 2's money and that this money was used to support the

family. Juan-Andres indicated this was a repayment for the fraudulent documents and Victim 2's smuggling into the United States.

### Human Trafficking and Sexual Assault Investigation of Victim 1

20.    On May 26, 2021, a forensic interview was conducted of Victim 1 at the Child Advocacy Center in Champaign Illinois. During the interview Victim 1 indicated that she had been brought to the United States from Guatemala by the aforementioned yet to be charged co-conspirator, whom Victim 1 identified by means of a provided photograph. Victim 1 indicated that this individual had told Victim 1 to say that this individual was Victim 1's father. Victim 1 stated after being encountered by Border Patrol she was put in contact with Catarina Domingo-Juan, who Border Patrol was led to believe was Victim 1's aunt. Victim 1 was ultimately sent to Catarina Domingo-Juan, a woman she had never previously met and whom she was not related to. Victim 1 indicated she initially went to school but then starting at the age of 12 was forced to start working, initially cleaning hotels, when she was not in school. Victim 1 indicated eventually she was forced to go to work full time instead of going to school. Victim 1 stated in order to work Catarina Domingo-Juan had gotten fraudulent documents for Victim 1. Victim 1 believed she had worked at Kraft using the name Ana and at Plastipak using the name Margarita Guadalupe. During the interview, Victim 1 identified herself photographed on the fraudulent state identification bearing the name Ana Rebecca Martinez and Margarita Guadalupe Lopez as noted above. Victim 1 further identified herself in a photograph associated with the employment of "Jeannette Berenise Camacho" at Elite Staffing. When shown the state identification associated with "Camacho", Victim 1 identified the female whose photograph appears on the identification as Victim 2.  Victim 1 indicated while residing with Catarina Domingo-Juan Victim 1 was subjected to physical abuse by Catarina Domingo-Juan including being beaten,

stabbed with a kitchen knife, and burned with a pan. Victim 1 further indicated that she was sexually assaulted by three male members of Catarina Domingo-Juan's extended family.

**Investigation of Lorenza Domingo-Castaneda and Florentina Juan-Andres**

21.     On June 4, 2021, your affiant met with representatives of Staff Management, located at 3310 W Springfield Avenue, Champaign, Illinois. Your affiant requested Staff Management to run identities, including "Sevilla" and "Trevino", identified during the investigation to see if those identities had been, or were currently being used, to employ individuals through Staff Management. Staff Management indicated that "Kacy Marie Sevilla" and "Alexis Lee Ann Trevino" were both current employees.

22.     On the same date, Staff Management provided your affiant with a copy of Forms I-9 associated with "Sevilla" and "Trevino"'s employment at Staff Management as well as a copy of documentation provided by "Sevilla" and "Trevino" as a part of the hiring process to show they were eligible to work in the United States.

23.     Your affiant reviewed the provided Form I-9 associated with the employment of "Sevilla". Section 1 of the form is the Employee Information and Attestation section and it specifies that this section is to be completed and signed by the employee "no later than the first day of employment, but not before accepting a job offer.: The form appears to have been electronically completed and signed in the name Kacy Marie Sevilla on April 29, 2021.

The following information was completed on the form:

Name: Kacy Marie Sevilla

Address: 10 Lemon Tree, Champaign, Illinois 61820

Social Security #: 627683069

Date of Birth:  08-04-1999

Employee's Email Address:   lorenza45domingo@gmail.com

Employee's Telephone Number:       (217) 721-6432[2]

The following admonition appears below the aforementioned provided information: "I am aware that federal law provides for imprisonment and/or fines for false statements or use of false documents in connection with the completion of this form."

- The Form I-9 also states "I attest under penalty of perjury, that I am (check one of the following boxes):", instructing the employee to select one (1) of four (4) possible choices. The box is marked next to the choice stating the employee is "1. A citizen of the United States".

- On the second page of the Form I-9 the following documents are listed as having been presented to show eligibility to work in the United States:

  o List B, Document Title: Driver's license or ID card issued by a State or outlying possession of the United States provide [sic], Issuing Authority: OH, Document Number: UA613452, Expiration Date (if any): 08/04/2025;

  o List C, Document Title: Social Security Account Number card other than one that specifies on the face that [sic], Issuing Authority: SSA, Document Number: 627683069, Expiration Date (if any): N/A.

24.      Your affiant reviewed the copies of documents which had been provided to Staff Management by "Sevilla" to prove eligibility to work in the United States. Your affiant found that the Social Security card provided to Staff Management was bearing the same name and Social Security number as the card located during the search of 10 Lemon Tree Drive on April

---

[2] Local police resources include a contact number for Lorenza Domingo-Castaneda and Florentina Juan-Andres with the phone number 217-721-6432.

12, 2021 but was a different card than the one located and seized from the residence. Your

affiant further noted that the Ohio Identification card provided by "Sevilla" contained the same

name and date of birth as the Indiana Identification card located during the search of 10 Lemon

Tree Drive but contained the photograph of a different female.

The Ohio Identification card included the following information:

  ID: UA613452

  Name: Kacy Marie Sevilla

  DOB: 08-04-1999

The Social Security card included the following information:

  Name: Kacy Marie Sevilla

  Social Security Number: 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

  25. Your affiant conducted records checks on Ohio Identification card UA613452.

Those records checks revealed no record on file for Ohio identification card UA613452.

  26. Your affiant reviewed the provided Form I-9 associated with the employment of

"Trevino". Section 1 of the form is the Employee Information and Attestation section and it

specifies that this section is to be completed and signed by the employee "no later than the first

day of employment, but not before accepting a job offer." The form appears to have been

electronically completed and signed in the name Alexis Lee Ann Trevino on May 15, 2019.

  The following information was completed on the form:

  Name: Alexis Lee Ann Trevino

  Address: 13 Magnolia Dr, Champaign, Illinois 61820

  Social Security #: 641609703

  Date of Birth: 02-22-1998

The following admonition appears below the aforementioned provided information: "I am aware that federal law provides for imprisonment and/or fines for false statements or use of false documents in connection with the completion of this form."

- The Form I-9 also states "I attest under penalty of perjury, that I am (check one of the following boxes):", instructing the employee to select one (1) of four (4) possible choices. The box is marked next to the choice stating the employee is "1. A citizen of the United States".

- On the second page of the Form I-9 the following documents are listed as having been presented to show eligibility to work in the United States:

  o List B, Document Title: Driver's license or ID card issued by a State or outlying possession of the United States provide [sic], Issuing Authority: TX, Document Number: 720125695, Expiration Date (if any): 02-22-2021;

  o List C, Document Title: Social Security Account Number card other than one that specifies on the face that [sic], Issuing Authority: SSA, Document Number: 641609703, Expiration Date (if any): N/A.

27.      Your affiant reviewed the copies of documents which had been provided to Staff Management by "Trevino" to prove eligibility to work in the United States.

The Texas Identification card included the following information:

ID: 720125695

Name: Alexis Lee Ann Trevino

DOB: 02-22-1998

The Social Security card included the following information:

Name: Alexis Lee Ann Trevino

15

Social Security Number: 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

28.     Your affiant conducted records checks on Texas Identification card 720125695.
Those records checks revealed no record on file for Texas Identification card 720125695. Your
affiant conducted records checks using Trevino's name and date of birth and found Alexis
Leeann Trevino holds a valid Texas Driver's License, number 42947575.

29.     On June 11, 2021, agents encountered "Trevino" at Staff Management during the
course of her employment. Initially she identified herself as Trevino but eventually admitted to
being Florentina Juan-Andres, not Trevino. During the encounter of Juan-Andres agents located
the aforementioned Texas identification card bearing the name Alexis Lee Ann Trevino in Juan-
Andres lunch box.

30.     During a post arrest interview and after being advised of her rights, per Miranda,
Juan-Andres admitted to presenting the documents bearing the name and biographical
information of Trevino for employment at Staff Management. Juan-Andres stated she had paid
Lorenza Domingo-Castaneda four thousand five hundred dollars ($4500) to be smuggled from
Guatemala to the United States and owed Lorenza an additional two thousand five hundred
dollars ($2500) for the smuggling. Juan-Andres further stated she had paid Lorenza one thousand
two hundred dollars ($1200) for the state identification card and Social Security card associated
with Trevino. Juan-Andres stated her boyfriend, Francisco Domingo-Castaneda, had also
purchased a state identification card and Social Security card from Lorenza for four hundred to
five hundred dollars ($400-500). Juan-Andres stated these cards were bearing the name David
Hernandez. Juan-Andres identified Francisco when shown the Hernandez documents received
from Staff Management. Juan-Andres also identified Victim 2, her stepsister, as the individual in
the photograph on the state identification card bearing the name Jeannette Berenise Camacho.

Juan-Andres further indicated Lorenza had coordinated Victim 2's smuggling from Guatemala into the United States. When pressed Juan-Andres stated that both Lorenza and Francisco Domingo-Castaneda were in contact with the individual who was obtaining this fraudulent identification. Juan-Andres stated she did not know this individual's name but had observed him to be a heavier set Hispanic male.

31.     On the same date agents encountered "Sevilla" at Staff Management during the course of her employment. Initially she identified herself as Sevilla but eventually admitted to being Lorenza Domingo-Castaneda, not Sevilla. During the encounter of Lorenza agents located the SUBJECT DEVICE in a clutch purse on Lorenza's person. When law enforcement officers arrested Lorenza, they removed the purse from her person and it remained with her property at the Champaign Police Department. CPD Detective Kaitlin Fisher removed the cell phone from Domingo-Castaneda's purse at CPD and took it directly to the High-Tech Crime Unit (HTCU) where she plugged it in and attempted but was unable to place it on airplane mode. The SUBJECT DEVICE was secured in the HTCU locked office and has remained there.

**Characteristics Typical of Human Trafficking and Immigration Smugglers**

32.     Based upon my training and experience in investigating individuals and organizations involved in the bringing in and harboring of certain aliens, and the production, distribution, possession, and use of fraudulent documents, as well as my discussions with other law enforcement agents with greater experience, and discussions I have had or witnessed with suspects of these types of criminal activity, I know:

> a.     Alien smugglers often work in small cells with contacts in Mexico, Central and South America to recruit people in these foreign locations willing to pay significant amounts of money to be transported from their countries of origin to the

Mexico-United States border to be smuggled illegally through the southern border of the United States without detection.

b.      Alien smugglers maintain lists to include illegal aliens' names, cellular telephone numbers of relatives or friends in the United States, destination city, smuggler name in originating country, smuggling fee amount, smuggler name in the United States, transporters names and telephone numbers and names of stash house keepers.

c.      Alien smugglers and fraudulent documents producers and vendors store information such as names, cellular telephone numbers, caller identification information, pager numbers, and other identification information in their cellular telephones.

d.      Based on my training and experience, I know that cellular telephones are commonly utilized by alien smugglers and document producers and vendors to coordinate their unlawful activities.  These devices, by their nature, are easily transportable and designed to be operable hundreds of miles from their normal area of operations, providing reliable and instant communications.  The cellular telephones are believed to contain telephone numbers and other numerical data linked to associates involved in the illegal enterprise of alien smuggling and movement of funds generated by such activity.  I know that cellular telephones have the assigned number to that phone, along with numbers dialed and calls received, and programmed numbers and names stored in their memory.  Accordingly, there is probable cause to believe that cellular telephones contain information relevant to the commission of a crime, to wit, conspiracy to transport illegal aliens, in violation

18

of 8 U.S.C. § 1324, including the assigned telephone number, telephone numbers dialed and the identification of numbers of calls received and other numerical data, including programmed numbers and voice and text messages in the electronic memory.

FURTHER AFFIANT SAYETH NOT.

s/Trevor Waite

_____

Trevor Waite
Special Agent
Department of Homeland Security
Immigration and Customs Enforcement
Homeland Security Investigations

Subscribed and sworn to before me this 15th day
of June, 2021.
s/Eric I. Long

_____

HONORABLE ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE

19

## **ATTACHMENT A**
### **Property to Be Searched**

The SUBJECT DEVICES are more particularly described as:

A cell phone inside a cell phone case with red flowers on it. A partial Model number, LM-Q730T, is visible on the back of the phone through the clear portion of the cell phone case. Based on open-source records checks of the partial Model number agents believe the cell phone to be an LG Stylo 6. The phone is pictured below.





20

## **ATTACHMENT B**

### **Particular Things to be Seized**

Items comprising evidence of, or property designed for use, intended for use, or used in committing violations of 8 U.S.C. § 1324, Bringing in and harboring of certain aliens, 18 U.S.C. § 1028, Fraud and related activity in connection with identification documents, authentication features, and information, 18 U.S.C. § 1028 Aggravated identity theft, 18 U.S.C. § 1546, Fraud and misuse of visas, documents and other permits, 18 U.S.C. § 1589, Forced labor, 18 U.S.C. § 1590, Trafficking with respect to peonage, slavery, involuntary servitude, or forced labor, and 18 U.S.C. § 371, Conspiracy, consisting of:

a) Records of telephone calls, including incoming, outgoing, and missed calls, phone contact addresses, email addresses and telephone numbers in directories, documents and files which reflect names, email addresses, addresses, telephone numbers and objects, and photographs related to transportation of certain aliens and/or the production, distribution, possession, or use of fraudulent identification documents and associates engaging in conspiracy to transport certain aliens and/or produce, distribute, possess, or use fraudulent identification documents contained in the cellular telephone;

b) Messages and emails contained in the cellular telephone related to transportation of certain aliens and/or the production, distribution, possession, or use of fraudulent identification documents; and

c) Records regarding the ownership and/or possession of the searched items.